NATHAN C. D. TAYLOR vs. LOUIS T. LABEAUME.

1. The agent of a lumber company, having full authority to transact any business for them— to employ men, purchase logs, sell lumber, and to perform any other business connected with the company, has "a general authority in a particular business," and may transfer lumber to the hands in payment of wages due them.

2. The question of excess of the authority of an agent should be left to the jury, under such general instructions from the court, as will give them at least, a latitude of consideration sufficiently ample, to permit the proper weighing of all the facts in the case, and the finding of a verdict accordingly.

## ERROR to St. Louis Circuit Court.

FIELD, for plaintiff in error.

The error of the court below consisted in giving the instruction which in effect took the whole case from the jury and compelled the plaintiff to become non-suit.

The instruction says that the transaction by which the plaintiff acquired his title was not within the authority of his agent.

But, the true character of the transfer, and the extent of the agent's authority, were both matters of fact to be determined by the jury.

The court below consequently touched on the province of the jury, in assuming by its instruction to decide those matters of fact.

TODD & KRUM, for defendant.

1. The instruction given by the court was according to the law of the case, under the testimony introduced by the plaintiff—according to that testimony the only power Perkins had for disposing of the lumber was to sell it.

In a written power of agency containing all of the foregoing expressions of powers both *general* and *specific*, by the settled rule of construction, the general expressions of power would be so restrained by the powers specifically named as to exclude every power of a dif-

ferent nature from those specified and what are unusual in the conduct of the business with reference to which the general powers are given: 7 Wend., 446; 5 B & A., 240; 5 Var. J., 211; 7 B. & C., 278; Story Ag., § 62, et seq.—ib. § 69,

As an agent with general authority to conduct and carry on the business of the St Croix Falls company, to sell their lumber and pay the debts incurred in the business, Perkins had power only to conduct and carry on the business, in the usual way thereof—his sales were to be for cash, and not on credit, and he should have paid the debts in cash, unless some custom or usage of the business be proved to the contrary: 1 Campbell, 258; 3 Pick. 495; 6 M. & S., 1, 14; 2 Stark. 21; 5 Wend. 33; 13 Mass , 178; 3 B. & A., 616; Story Ag., sections 77, 98, 99, 113, 225.

A universal agent can never be inferred if it can potentially exist: Story on agency, sections 21, 19, 126, 128, 131.

2. As the defendant took this property for a debt of the St. Croix lumber company, he has the right to show that no title passed from Perkins to Taylor: 18 J. R., page 363, Beal vs. Allen.

3. The bill of porcels of Perkins to Taylor of the lumber does not transfer the title of the company. By it Taylor buys the lumber of Perkins simply and directly as principal.

BIRCH, J., delivered the opinion of the court.

A company called the "St. Croix Falls Company," of which Robert Rantoul, Jr., of Massachusetts, was President and other citizens of that State were the members, was engaged, through their agent, Perkins, in manufacturing lumber at the falls of that river, (in Wisconsin) to carry on which, in its various departments, including the rafting of it to St. Louis, which was the principal place of sale, required a great number of workmen.

Of the nature and extent of Perkins' agency, concerning which there is no written authority, we deem that there is even less ambiguity than seems to be conceded in the argument of the appellant's counsel, inasmuch as having been himself the best witness who was introduced in reference to it, after its establishment by others, he swears distinctly and uncontradictedly, that at the time of the transaction which constitutes the turning point in this suit, he "was the agent of the company, with full authority to transact any business for them—to employ men, purchase logs, sell lumber, *or to perform any other business connected* with the said company." It may as well be here added, as seeming to us, that the aggregate of the other testimony concerning the statements and conversations of Rantoul, the President of the company, when he visited the falls in July 1848, rather strengthens than subtracts from the clear and explicit statement of the agent himself.

It appears that the members of the company never had any personal charge of its business operations, and that during the summer of 1848, being much in arrear to the workmen, for wages, and having no money wherewith to pay them, Perkins proposed, in response to their impor-

Taylor vs. Labeaume.

tunities (and it may be assumed as the only method of keeping them together and carrying on the business) to pay them in lumber. The hands thereupon held a meeting, and concluded to take a quantity sufficent to pay the amount due them, and as the mill could not be run unless most of the hands remained, they concluded to make up a raft and send it to St. Louis, by Taylor, to be sold for them. For the purpose, apparently, of rendering the transaction simpler and surer, it appears to have been agreed that an absolute bill of sale of the lumber should be executed to Taylor, which was accordingly done by Perkins, as agent for the company. There was nevertheless a verbal understanding, all round, that if one Green, at St. Louis, who had been in some manner interested in the affairs of the company, would advance to Taylor the aggregate sum due the hands, (which was ascertained) and also the outlay of running the raft to St. Louis, it should be turned over to him, and if it produced more than that sum, it should go to the credit of the company. It is deemed unnecessary to scan this collateral understanding more particularly, as it does not appear to have been adopted or acceeded to by Green.

So far, therefore, as it is deemed necessary here to be recounted, it was substantially under the circumstances thus detailed, that the raft reached St. Louis, in possession of the plaintiff about the middle of the month of September, 1848, and having been seized and held by the sheriff of that county, under two writs of attachment, on the 19th of that month, the plaintiff commenced his action of trover on the 21st, and complaining of the subsequent instruction of the circuit court, under which he submitted to a nonsuit, brings the case to this court by writ of error.

The instruction was that "should the jury believe from the evidence, that the lumber in controversy was, at the time of the transfer by Perkins to the plaintiff, the property of the St. Croix lumber company, and that defendant took it under writs of attachment, for debts of said company, the jury ought to find for defendant—the authority conferred upon Perkins to conduct and manage the business concerns of the company, taking that authority in the largest sense in which it has been established by the evidence, being inadequate to such a transaction, which was ineffectual, therefore, in the case supposed, to make any change of property as to the company or the attaching creditors."

The question here presented, to which all others are corollary, is, whether under the circumstances detailed in the testimony, the agent of the company was justifiable, in making the contract or arrangement into which he entered with the hands he had employed, and with the plain-

tiff? If so, the property in question, which was substantially transferred to the plaintiff in fulfilment of that arrangement, was unquestionably valid as vesting in *him* the *right*, as there was also devolved upon him the *duty*, to dispose of it for the benefit of the parties concerned.

The rule of construction contended for by the counsel for the appellee, and which was doubtless in the court below, is unquestionably a correct one—the only difference between that tribunal and this one consisting in its application to the facts in this case. It seems to us that here, the testimony in the record sufficiently demonstrates the agency of Perkins to have covered "a general authority in a particular business," of which selling the lumber and paying the hands were prominent items; and that although the usual method of disposing of the lumber was to send it to St. Louis and *there* sell it, there was nothing shewn which so *literally restricted* the agent to that course, as to invalidate what he seems to have done in "good faith," and uncomplained of by his principal, under the apparently urgent circumstances by which he was surrounded. It may be fairly assumed, indeed, that he did no more than was "necessary and proper" to carry out and perform the special duties with which he was generally entrusted, and which were, naturally and obviously, incident to his station. At all events, the question of excess of authority should have been left to the jury, under such general instructions from the court, as would have given to them at least a latitude of consideration sufficiently ample to have permitted the proper weighing of all the facts in the case, and the finding of a verdict accordingly. The judgment of the circuit court is therefore reversed and the cause remanded.